UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

COURTNEY G.[1],          )
                        )
            Plaintiff,  )
                        )
        v.              )        No. 1:20-cv-03311-DLP-JPH
                        )
KILOLO KIJAKAZI,        )
                        )
            Defendant.  )

## ORDER

Plaintiff Courtney G. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Social Security Disability Insurance Benefits ("DIB") under Title II

of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below,

the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further consideration.

## I.   PROCEDURAL HISTORY

On March 25, 2015, Courtney filed an application for Title II DIB. (Dkt. 15-5

at 2, R. 2890). Courtney's application alleged disability beginning October 1, 2014,

as a result of depression, panic attacks, anxiety, diabetes, morbid obesity, diabetic

neuropathy, chronic back pain, carpal tunnel syndrome, hypertension, and bilateral

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

foot and joint pain. (Dkt. 15-3 at 2, R. 105). The Social Security Administration ("SSA") denied Courtney's claim initially on April 28, 2015, (Dkt 15-4 at 2-5, R. 162-165), and on reconsideration on June 26, 2015. (Id. at 9-15, R. 169-75). On July 3, 2015, Courtney filed a written request for a hearing, which was granted. (Dkt. 15-4 at 17, R. 177). On February 23, 2017, Administrative Law Judge ("ALJ") Gladys Whitfield conducted a hearing, where Courtney and vocational expert, Darren Wright, appeared in person. (Dkt. 15-2 at 44-80, R. 43-79; Dkt. 15-3 at 49, R. 152). On March 14, 2017, ALJ Whitfield issued an unfavorable decision finding that Courtney was not disabled. (Dkt. 15-3 at 32-50, R. 135-53). Courtney appealed the ALJ's decision, and, on February 15, 2018, the Appeals Council granted the request, remanding the case to an Administrative Law Judge for further consideration of Courtney's maximum residual functional capacity and to provide appropriate rationale in support of the assessed limitations. (Dkt. 15-3 at 55-58, R. 158-61).

On July 17, 2018, ALJ Whitfield conducted a new hearing at which Courtney and vocational expert, Michael Blankenship, appeared in person. (Dkt. 15-2 at 83-105, R. 82-104). On August 9, 2018, ALJ Whitfield again issued an unfavorable decision finding that Courtney was not disabled. (Dkt. 15-2 at 14-33, R. 13-32). Courtney appealed the ALJ's decision, and, on November 14, 2018, the Appeals Council denied Courtney's request for review, making the ALJ's decision final. (Dkt. 15-2 at 2-5, R. 1-4). Courtney sought judicial review of ALJ Whitfield's decision in this Court on January 16, 2019. (Dkt. 15-10 at 39-40, R. 1025-26). On January 7,

2020, the Honorable James R. Sweeney II reversed and remanded the matter back to the Agency for further proceedings. (Dkt. 15-10 at 49-69, R. 1035-55).

On remand, on March 11, 2020, the Appeals Council assigned the matter to ALJ Belinda Brown for further proceedings. (Dkt. 15-10 at 70-73, R. 1056-59). ALJ Brown conducted the remand hearing on June 30, 2020. (Dkt. 15-9 at 26-79, R. 934-87). Courtney, medical experts, Dr. Lee Fischer and Dr. James Brooks, and vocational expert, Dewey Franklin, appeared telephonically. (Id.; Dkt. 15-14 at 2-4, R. 1229-31). On August 31, 2020, ALJ Brown issued an unfavorable decision finding that Courtney was not disabled. (Dkt. 15-9 at 5-17, R. 913-25). The Appeals Council declined to assume jurisdiction over Courtney's case, rendering the ALJ's decision final and appealable. Courtney now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant

numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves h[er] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to

determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Courtney is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford*

5

*v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III. BACKGROUND

### A. Factual Background

Courtney was thirty-eight years old as of her alleged onset date of October 1, 2014. (Dkt. 15-3 at 2, R. 105). Courtney completed one year of college. (Dkt. 15-6 at 23, R. 337). She has past relevant work as a billing clerk and customer service clerk in the insurance and health care industries. (Dkt. 15-6 at 24, 67, R. 338, 381).

### B. ALJ Decision

In determining whether Courtney qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R.

§ 404.1520(a) and concluded that Courtney was not disabled. (Dkt. 15-9 at 5-17, R. 913-25). At Step One, the ALJ found that Courtney had not engaged in substantial gainful activity from her alleged onset date of October 1, 2014 through her date last insured of December 31, 2019. (Dkt. 15-9 at 7, R. 915).

At Step Two, the ALJ found that Courtney has severe medically determinable impairments of morbid obesity, peripheral neuropathy, depression, and anxiety with panic episodes. (Dkt. 15-9 at 8, R. 916). The ALJ also found non-severe impairments of diabetes mellitus; hypertension; carpal tunnel syndrome bilaterally; cubital tunnel syndrome bilaterally; mild bilateral knee degenerative joint disease; and mild degenerative changes of the thoracic, lumbar, and cervical spine. (Id.).

At Step Three, the ALJ found that Courtney's impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Dkt. 15-9 at 8-10, R. 916-18). In reaching this determination, the ALJ considered Listings 11.14 (peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and SSR 19-2p (obesity). (Id. at 8-9, R. 916-17).

As to the "paragraph B" criteria, the ALJ found Courtney had a mild limitation in understanding, remembering, or applying information; and moderate limitations in interacting with others, adapting or managing oneself, and concentrating, persisting, or maintaining pace. (Dkt. 15-9 at 9, R. 917). The ALJ also found the "paragraph C" criteria not satisfied. (Id.).

7

After Step Three but before Step Four, the ALJ found that Courtney had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following exertional and postural limitations: sitting for 6 hours but only for 2 hours at one time; standing or walking for 2 hours but for only 30 minutes at one time; occasionally climb ramps and stairs, balance, and stoop; never work around unprotected heights; no kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds; and is limited to simple, routine, and repetitive tasks with occasional contact with supervisors, coworkers, and the public. (Dkt. 15-9 at 10-15, R. 918-23).

At Step Four, the ALJ concluded that Courtney was unable to perform any past relevant work. (Dkt. 15-9 at 15, R. 923). At Step Five, relying on the vocational expert's testimony, the ALJ concluded that, considering Courtney's age, education, work experience, and residual functional capacity, the Plaintiff was capable of performing other work. (Dkt. 15-9 at 15-16, R. 923-24). The ALJ thus concluded that Courtney was not disabled. (Id. at 16-17, R. 924-25).

## IV. ANALYSIS

Courtney argues that this matter should be remanded on various grounds. First, the Plaintiff maintains that the ALJ failed to account for Courtney's functional limitations when crafting the residual functional capacity and in the hypothetical questions posed to the vocational expert. Next, the Plaintiff contends that the ALJ overemphasized her activities of daily living. Finally, Courtney maintains that the vocational expert's testimony regarding the number of jobs

available to her in the national economy was unreliable. (Dkt. 21). The Court will address these issues in turn.

## A. Residual Functional Capacity

Courtney contends that the ALJ's RFC assessment is not supported by substantial evidence and fails to fully account for her physical limitations. (Dkt. 21 at 10-16). In response, the Commissioner maintains that the ALJ's physical RFC assessment is supported by substantial evidence, and the Plaintiff, in essence, is asking the Court to impermissibly reweigh the evidence. (Dkt. 22 at 6-7).

When determining Courtney's RFC, the ALJ was required to conduct a function-by-function assessment of the physical and mental work-related activities Courtney could perform on a regular and continuing basis despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. In making this assessment, the ALJ must consider all the relevant evidence in the record. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical [] limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

As noted above, the ALJ concluded that Courtney had the RFC to perform sedentary work, limited, *inter alia*, to sitting for two hours at a time and standing or walking for 2 hours but for only 30 minutes at one time. Based on the medical records and her subjective statements at the hearing, Courtney maintains the ALJ should have found greater limitations in regards to her need to elevate her legs throughout the day and her inability to stand for 30 minutes at a time. (Dkt. 21 at 10-16).

      i.   *Leg Elevation*

First, Courtney contends that the ALJ's RFC assessment is flawed because it fails to account for Plaintiff's edema and her need to elevate her legs. (Dkt. 21 at 10). Relying on her Nurse Practitioner ("NP") Debra Lustig's records, Courtney maintains that the ALJ erred in finding that Plaintiff did not need to elevate her legs. (Id. at 11-12). In addition, Courtney maintains that the ALJ erred in giving medical expert, Dr. Fischer's, testimony greater weight than NP Lustig. (Id. at 12-13). In response, the Commissioner maintains that the ALJ's RFC is supported by the record, and the Court should not accept the Plaintiff's invitation to reweigh the evidence. (Dkt. 22 at 11-14).

Here, the ALJ considered the opinions of the state agency consultants, the medical expert's testimony, Courtney's treatment history with NP Lustig, and the Plaintiff's hearing testimony, and ultimately concluded that Courtney's edema did not require her to elevate her legs. (Dkt. 15-9 at 10-15, R. 918-23). Specifically, the ALJ acknowledged NP Lustig's 2015 and 2017 prescriptions for leg elevation, (Dkt.

15-9 at 14, R. 922; Dkt. 15-7 at 305, 361-62, R. 754, 810-11), but noted that this limitation was generally inconsistent with the largely negative physical exam findings. (Dkt. 15-9 at 14, R. 922).

At the hearing, Dr. Fischer, a medical expert, opined that NP Lustig's prescription that Courtney should have her legs elevated for edema was unreasonable. (Dkt. 15-9 at 12, 33, R. 920, 941). Dr. Fischer explained that a prescription for leg elevation for edema would only be used if the edema was being caused by venous insufficiency or cardiac problems. (Dkt. 15-9 at 12, 34, R. 920, 942). Because Courtney's edema was being caused primarily by obesity, Dr. Fischer testified that the leg elevation would be a temporary measure that would reform when the Plaintiff stopped elevating her legs.[2] (Dkt. 15-9 at 12-13, 34-36, R. 920-921, 942-944). Thus, Dr. Fischer concluded that the prescription for leg elevation was unreasonable. (Dkt. 15-9 at 12, R. 920).

Courtney challenges the ALJ's decision to give little weight to NP Lustig's opinion and greater weight to the testimony of Dr. Fischer. While Courtney acknowledges that Ms. Lustig, a nurse practitioner, was not an "acceptable medical source" under the agency rules at the time,[3] she maintains that the ALJ erred by

---

[2] Dr. Fischer also testified that Courtney's peripheral neuropathy would not typically be affected her elevating her legs. (Dkt. 15-9 at 12, 41, R. 920, 949).

[3] The Social Security Administration distinguishes between medical evidence from "acceptable medical sources" and other sources. For claims filed before March 27, 2017, a nurse practitioner is a "medical source" but is not an "acceptable medical source" or "treating source" for purposes of the regulations. *See* 20 C.F.R. § 416.902 (effective June 13, 2011 to Mar. 26, 2017); 20 C.F.R. § 416.913(d)(1) (effective Sept. 3, 2013 to Mar. 26, 2017) (listing nurse-practitioner as a "medical source" that does not qualify as an "acceptable medical source"); SSR 06–03p, 2006 WL 2329939, at *2 (stating that nurse practitioners are not "acceptable medical sources"). *Turner v. Astrue*, 390 F.

failing to recognize the record evidence that supported NP Lustig's opinion. (Dkt. 21 at 11-12). As support, Courtney points to the fact that NP Lustig consistently treated the claimant for five years. (Dkt. 21 at 12). She also highlights portions of NP Lusting's treatment records from 2014 diagnosing edema. (Dkt. 21 at 12 n. 4 *referencing* Dkt. 15-7 at 10-12, 36, 41, 144-45, 153, 166, 171; R. 459-61, 485, 490, 592-93, 602, 615, 620). In addition, Courtney notes that other medical doctors, including Dr. Shelly Stiner, Doctor of Osteopathic Medicine, and consultative examiner, Dr. Andrew Koerber, supported NP Lusting's finding of edema. (Dkt. 21 at 12 n.4 *referencing* Dkt. 15-7 at 80, 280; R. 529, 729).

As long as an ALJ minimally articulates her reasons to reject a medical opinion, the Court will uphold that decision. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008); *see also Esquibel v. Berryhill*, No. 1:18-CV-159-JPK, 2019 WL 1594339, at *3 (N.D. Ind. Apr. 15, 2019) (an ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion); *Craft*, 539 F.3d at 676. The ALJ is instructed, when evaluating a medical opinion, to consider: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was

---

App'x 581, 586 (7th Cir. 2010). "While the regulations provide specific criteria—examining relationship and treating relationship, for example—for evaluating medical opinions from acceptable medical sources, they do not explicitly address how to consider medical evidence from other sources." *Frame v. Astrue*, No. 1:11-CV-01062-WTL, 2012 WL 3637583, at *9 (S.D. Ind. Aug. 21, 2012).

offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). *Keeley v. Berryhill*, No. 1-17-cv-3611-SEB-TAB, 2018 WL 3422129, at *4 (S.D. Ind. June 26, 2018), report and recommendation adopted, No. 1:17-cv-3611-SEB-TAB, 2018 WL 3416515 (S.D. Ind. July 12, 2018). Because NP Lustig was not an acceptable medical source, the ALJ's application of these factors "depend[] on the particular facts" of the claim and "not every factor" [will] "apply in every case." *Sosh v. Saul*, 818 F. App'x 542, 547 (7th Cir. 2020) (citing 20 C.F.R. § 404.1527(f)(1)).

On May 13, 2015, NP Lustig completed a physical residual functional capacity questionnaire in which she opined that Courtney could stand and/or walk for less than 1 hour in an 8-hour workday, with normal breaks; could stand for 15 minutes at a time before needing to change positions; could walk for 30 minutes at a time with a 5-minute break; needed to periodically alternate between sitting and standing to relieve pain or discomfort; and was not medically required to use a hand-held assistive device for ambulation. (Dkt. 15-7 at 294-97, R. 743-46). NP Lustig also entered prescriptions in 2015 and in 2017 opining that Courtney needed to elevate her legs numerous times daily to help with Plaintiff's edema. (Dkt. 15-7 at 305, 361-62, R. 754, 810-11).

In her decision, the ALJ adequately explained why she gave NP Lustig's opinion "little weight." (Dkt. 15-9 at 14, R. 922). The ALJ first noted that NP Lustig's opinion was not entitled to controlling weight because NP Lustig was not

an acceptable medical source. (Id.). The ALJ also found NP Lustig's opinion generally inconsistent with and unsupported by the substantial evidence, including the largely negative physical examination findings. (Dkt. 15-9 at 14, R. 922). In her decision, the ALJ acknowledged NP Lustig's diagnosis of edema and her prescriptions in 2015 and 2017 providing that Courtney elevate her legs. (Dkt. 15-9 at 14, R. 922). The ALJ noted, however, that there were "no detailed physical exam findings consistently and sufficiently documenting [the] edema."4 (Dkt. 15-9 at 14, R. 922). The ALJ also noted that Dr. Koerber, who conducted the consultative examination in April 2015, found trace edema in the lower extremities, and that Courtney had the ability to ambulate about the room at a normal pace without holding onto the wall or using an assistive device. (Dkt. 15-9 at 14, R. 922; Dkt. 15-7 at 277-83, R. 726-32). The ALJ explained, however, that more recent treatment records from November 2018 showed "no edema." (Id.). Considering the entire medical record, including Dr. Fischer's testimony that Courtney's edema did not require leg elevation, the ALJ decided against including this limitation in the RFC.

The amount of weight given to a physician's opinion is solely within the ALJ's discretion, and the Court may not substitute its own judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Esquibel v. Berryhill*, No. 1:18-CV-159-JPK, 2019 WL 1594339, at

---

4 *Compare* Dkt. 15-7 at 7, 14-15, 93, 134, 234, 248, 258, 355, 368, R. 456, 463-64, 542, 583, 683, 697, 707, 804, 817; Dkt. 15-8 at 49, 56, 62, R. 867, 874, 880; Dkt. 15-14 at 6, 14, 19-20, 23, 25, 27, 29, R. 1233, 1241, 1246-47, 1250, 1252, 1254, 1256 (records finding no edema or swelling on physical examination) *with* Dkt. 15-7 at 10-11, 80, 153, 280, 286, R. 459-60, 529, 602, 729, 735; Dkt. 15-8 at 53, R. 871 (records finding edema or swelling on physical examination).

*2-3; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted); *Clifford*, 227 F.3d at 869 (noting that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner"). Because the ALJ identified the facts she relied on in determining the weight to give the medical opinions in the case, including NP Lustig's treatment records, Plaintiff's complaints of edema in the lower extremities, the November 2018 exam finding of "no edema," and the testimony of Dr. Fischer, (Dkt. 15-9 at 12-14, R. 920-22), the Court concludes that the ALJ built an accurate and logical bridge between the evidence and her conclusion adequately explaining her reasoning for not including a leg elevation limitation in the RFC. Thus, remand is not appropriate on this issue.

ii.   *Ability to Stand*

Second, Courtney maintains that the ALJ's finding that the Plaintiff can "stand and walk for 2 hours, but only for 30 minutes at a time," fails to account for her pain from peripheral neuropathy and is unsupported by the evidence. (Dkt. 21 at 14-16). In particular, Courtney argues that the ALJ misstated Dr. Fischer, who opined that Plaintiff could stand for *three minutes*, not thirty. (Id. at 14). Courtney also asserts that the ALJ failed to confront Plaintiff's issues with pain and misrepresented her activities of daily living. (Id. at 15-16).

In response, the Commissioner argues that the Plaintiff is attempting to "exploit a transcription error to argue that the ALJ erred in determining that

Plaintiff could stand or walk for 30 minutes consecutively." (Dkt. 22 at 7). The Commissioner asserts that the context of the record makes clear that Dr. Fischer testified that Courtney could stand for 30 minutes, and that's how the ALJ understood Dr. Fischer's testimony. (Dkt. 22 at 7-8). The Commissioner also contends the ALJ reasonably found that Plaintiffs subjective reports did not overcome the objective and medical opinion evidence that Plaintiff could stand or walk for at least 30 minutes consecutively. (Id. at 8-10).

In reply, Plaintiff asserts that the Commissioner's "transcription error" claim is unsupported. (Dkt. 23 at 2). Specifically, Courtney points out that the digital audio recording of the hearing has been available to all parties and that the transcript has been certified as "full and accurate." (Id. at 3). Plaintiff maintains that Dr. Fischer's standing limit of 3 minutes is consistent with Courtney's morbid obesity. (Id.).

From a review of the hearing transcript, the Court cannot confidently agree that Dr. Fischer opined that Courtney could stand for 30 minutes at one time. At no point during the ALJ's examination of Dr. Fischer did she explicitly ask Dr. Fischer how long Courtney could stand. (Dkt. 15-9 at 30-36, R. 938-44). Rather, the questioning came during Attorney Ms. Rutkowski's examination of Dr. Fischer. Attorney Rutkowski began by asking Dr. Fischer about his expectation of how long Courtney, an individual whose weight fluctuated from the 450s up into the 570s during the relevant period, could stand. (Dkt. 15-9 at 36-37, R. 944-45). According to the certified transcript, Dr. Fischer testified that he thought Courtney

16

could stand for 3 minutes without holding onto anything. (Dkt. 15-9 at 37, R. 945). When questioned about whether peripheral neuropathy could impact an individual's ability to feel their feet while trying to stand for 30 minutes, Dr. Fischer testified that he could not provide a definitive answer because neuropathy can affect people differently. (Dkt. 15-9 at 38, R. 946). From the Court's reading of the transcript, it is not clear that Dr. Fischer ever opined that Courtney could stand for 30 minutes, and the audio recording was not part of the Certified Record.[5]

While Plaintiff maintains that the alleged transcription error is something that could have easily been resolved by Defendant providing an affidavit correcting the discrepancy, (Dkt. 23 at 3), the Court disagrees. Sentence four of 42 U.S.C. § 405(g) fails to authorize this Court to admit new evidence or to base its decision on anything outside the Certified Record. *Owens v. Comm'r of Soc. Sec.*, No. 8:14-cv-2064-T-DNF, 2015 WL 5735607, at *4 (M.D. Fla. Sept. 22, 2015); *Kuligowski v. Comm'r of Soc. Sec.*, No. C18-5906JLR, 2019 WL 2339973, at *1 (W.D. Wash. June 3, 2019) (the court has no authority to amend the administrative record); *see also Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. Apr. 2, 2012) (finding remand necessary due to evidentiary deficit). For this reason, the Court's decision of whether there is substantial evidence to support the RFC's 30-minute standing limitation is limited to the briefs and the certified transcript.[6]

---

[5] In Plaintiff's brief, she argues that "the digital audio testimony was always fully available to the ALJ, the decision writing staff and the Plaintiff's counsel while the case was claim [sic] was pending administratively." (Dkt. 23 at 3).

[6] Sentence four of 42 U.S.C. § 405(g) provides that this Court has the "power to enter, upon the pleadings *and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." (emphasis added).

To support the RFC standing limitation, the ALJ relied on the medical opinions in the record, including the testimony of Dr. Fischer, state agency medical consultants, Drs. M. Ruiz and Joshua Eskonen, consultative examiner, Dr. Koerber, and NP Lustig, as well as Plaintiff's subjective statements.

Drs. Ruiz and Eskonen opined that Courtney could stand and/or walk for a total of 2 hours, with normal breaks. (Dkt. 15-3 at 8, 22, R. 111, 125). In reaching this determination, Drs. Ruiz and Eskonen considered Courtney's complaints of peripheral neuropathy; her weight and high BMI; her antalgic gait[7] with no assistive device; the reduced range of motion in her lower spine, knees, and hips; and her 5/5 strength in her extremities. (Id.). The ALJ gave these opinions "some weight," finding them "somewhat" consistent with and supported by substantial evidence, but also acknowledged evidence supporting different and greater limitations. (Dkt. 15-9 at 13, R. 621).

Dr. Koerber examined Courtney on April 24, 2015 and concluded that Courtney is able to perform activities involving sitting, standing, and moving about for no more than 30 minutes at any one time. (Dkt. 15-7 at 730). Dr. Koerber opined that given Plaintiff's physical examination, including her trouble ambulating, it would be reasonably expected that Plaintiff would have difficulty performing activities involving moving about for long periods. (Id. at 282, R. 731). Dr. Koerber

---

[7] "Antalgic gait" refers to walking with a limp that is caused by pain. Scott Frothingham, *Antalgic Gait: Causes, Symptoms, and Treatment*, HEALTHLINE (Dec. 10, 2021), https://www.healthline.com/health/antalgic-gait.

also opined that Courtney did not exhibit any neurologic deficit as her strength was 5/5 in all extremities. (Id.). The ALJ also gave this opinion "some weight" on the basis that Dr. Koerber's opinion was "somewhat" consistent with, and supported by, substantial evidence but newer evidence post-dating Dr. Koerber's report supported some different limitations. (Dkt. 15-9 at 13-14, R. 921-22).

As previously mentioned, NP Lustig opined that Courtney could stand for 15 minutes at a time before needing to change positions. (Dkt. 15-7 at 294-97, R. 743-46). The ALJ gave NP Lustig's opinion "little weight" however, as noted above, the ALJ's reasoning largely related to Plaintiff's edema and need to elevate her legs. (Dkt. 15-9 at 14, R. 922).

In short, after considering (1) Drs. Ruiz and Eskonen's opinions, which the ALJ thought imposed lesser limitations than warranted; (2) Dr. Koerber's opinion, which provides no indication of how long Courtney can stand; (3) NP Lustig's opinion, which the ALJ discounted; (4) and Dr. Fischer's testimony that Courtney could only stand for three minutes, the Court cannot conclude that the ALJ's standing limitation is supported by substantial evidence. Accordingly, the Court remands on this issue.

      iii.   *Subjective Symptom Assessment*

Because the Court has already determined that the ALJ's RFC assessment warrants remand, the Court will not address Courtney's argument that the ALJ erred during her 16-3p evaluation of Plaintiff's subjective symptoms. On remand, the ALJ should give further consideration to the interplay between Plaintiff's

obesity, neuropathy, and her activities of daily living when evaluating Courtney's subjective symptoms.

### B. Step Five

Lastly, in the "Issues Presented" section as well as the opening paragraph of the discussion section of Plaintiff's brief, Plaintiff asserts that the ALJ erred at Step Five. (Dkt. 21 at 1, 10). However, there is no further development of this argument. Rather, after articulating her RFC arguments, Plaintiff simply states that she "will supplement this argument with Part B." (Dkt. 21 at 16). The Commissioner contends that Plaintiff has forfeited any challenge to Step Five because Plaintiff failed to develop her argument in her brief. (Dkt. 22 at 14). The Court agrees. The Plaintiff's complete lack of development of this argument is sufficient to find waiver and to demonstrate that she has failed to carry her burden on this matter. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

### V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration. Final judgment will issue accordingly.

So ORDERED.

Date: 8/5/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email